IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CORTEX SURVEILLANCE AUTOMATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | 1:05CV562 |
| v. | ) ) | |
| SECURITY INTEGRATORS AND CONSULTANTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This suit arises from a dispute between Plaintiff Cortex Surveillance Automation, Inc. ("Cortex") and Defendant Security Integrators and Consultants, Inc. ("SICI") regarding a software licensing agreement. It is currently before the Court on the following matters: (1) Defendant's Motion to Dismiss for Improper Venue, or alternatively, Motion to Transfer Case [Doc. #5], and (2) Plaintiff's Motion to Strike, or in the Alternative, Motion to Allow the Filing of Supplemental Affidavit [Doc. #17].

I.

SICI is a corporation organized under the laws of the state of Texas with its principle place of business in Houston, Texas. In 2002, SICI, through its president, Richard Peinado, contacted Cortex concerning the possible licensing of some of Cortex' technology. Cortex is a North Carolina corporation with its principal, and

only, place of business in Durham, North Carolina.[1]

After contacting Cortex initially, Mr. Peinado traveled to Cortex' office in Durham to evaluate the technology and to begin negotiating the terms of an agreement between the parties. On August 19, 2002, SICI and Cortex entered into a License Agreement[2] in which SICI agreed to purchase certain amounts of the Licensed Technology, as defined in the License Agreement, for a specified dollar amount. This Agreement allowed SICI to use copies of the Cortex software in various security related applications.

The License Agreement's initial term was two years with an automatic renewal provision for successive one year terms. The agreement would not be renewed if notice was given at least 30 days before the date of the automatic renewal. After the License Agreement was signed, SICI's president, Mr. Peinado visited the Cortex office in Durham again and met with Randall Thompson, the current President of Cortex.

On May 17, 2005, Cortex filed the present case against SICI in the General Court of Justice, Superior Court Division, Orange County, North Carolina: File No.

---

[1] Although at the time this lawsuit was filed, Cortex had been administratively dissolved by the Secretary of State's Office for failing to file annual reports, Cortex' corporate status has since been reinstated.

[2] The License Agreement was signed by Mr. Peinado on behalf of SICI on August 15, 2002 and was signed by Mr. Greg A. Christos, the President and CEO of Cortex at that time, on August 19, 2002. The terms of the Agreement stated it was effective August 19, 2002.

2

05-CVS-1016. The Complaint alleges breach of contract by SICI because it failed to make the minimum purchases of the License Technology as required by the License Agreement.[3] On June 21, 2005, Defendant SICI removed this action to the Middle District of North Carolina based on diversity jurisdiction [Doc. #2]. On August 23, 2005, SICI filed a Motion to Dismiss alleging improper venue, contending it is not subject to personal jurisdiction in North Carolina and, alternatively, a Motion for Transfer requesting the case be transferred to the Southern District of Texas [Doc. #5].[4] Cortex filed its Response in Opposition on September 30, 2005 [Doc. #8]. On October 14, 2005, SICI filed a Reply [Doc. #15].

## II.

Before evaluating the merits of SICI's Motion to Dismiss, Cortex' Motion to Strike must be addressed. Cortex filed a motion requesting SICI's Reply be stricken because the Reply was not filed within 10 days of service of the Response pursuant to Local Rule 7.3(h) and was not limited to a discussion of those matters

---

[3] Specifically, SICI has purchased only 102 copies of the Licensed Technology. Cortex contends SICI is required to purchase 455 copies under the License Agreement.

[4] SICI initially failed to attach a supporting memorandum to its Motion to Dismiss as required by Local Rule 7.3(j). However, on October 12, 2005, SICI's Amended Motion for Extension of Time to File Its Memorandum of Law in Support of Its Motion to Dismiss or Transfer [Doc. #12] was Granted [Doc. #13]. The accompanying memorandum was filed on October 12, 2005 [Doc. #14].

raised in Cortex' Response as required by Local Rule 7.3(h) [Doc. #17].[5] SICI responded to Cortex' Motion to Strike on October 22, 2005 [Doc. #19] explaining that the reply was comprehensive because it did not know if its motion for Extension for Time would be granted at the time the Reply was filed. SICI did not explain why its Reply was untimely nor justify its late filing. Thus, Cortex' motion to strike SICI's Reply and accompanying affidavit will be granted.

### III.

SICI first requests this action be dismissed for lack of personal jurisdiction. See 28 U.S.C. § 1391. When such a motion is made, the plaintiff bears the ultimate burden to show by a preponderance of the evidence that personal jurisdiction is proper as to each defendant. Ward v. Wavy Broadcasting, LLC, 2003 WL 715910, at *2 (M.D.N.C. Feb. 25, 2003) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In considering a motion to dismiss for lack of personal jurisdiction, a court may either evaluate the motion on the basis of the pleadings and affidavits, postpone the decision and allow discovery on the issue, or hold an evidentiary hearing. Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988); see also Combs v. Bakker, 886 F.2d at 676; Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). When personal jurisdiction is examined only on the basis of motion papers – including affidavits, legal memoranda, and the

---

[5] In the alternative, Cortex moves for leave to file the Supplemental Affidavit of Randall Thompson in order to fully respond to the new argument raised in SICI's Reply.

4

allegations of the complaint – the plaintiff is required only to make a *prima facie* showing of personal jurisdiction. Combs, 886 F.2d at 676. In determining whether a *prima facie* showing has been made "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

Whether personal jurisdiction is proper involves a two-part inquiry. First, the court must determine whether the state long-arm statute authorizes the exercise of jurisdiction under the circumstances. Mylan Labs. Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). Second, if authorization under the long-arm statute is found, the court must then consider whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution. Id.

A.

The applicable North Carolina long-arm statute in this case is North Carolina General Statute § 1-75.4. Section § 1-75.4 (5)(d) provides that jurisdiction exists in any action which "[r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." N.C. Gen. Stat. § 1-75.4(5)(d). Since the North Carolina Supreme Court has interpreted the North Carolina long-arm statute as conferring upon the courts "the full jurisdictional powers permissible under federal due process," Dillon v.

5

Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977); see also Vishay Intertech., Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982), the inquiry turns to whether the exercise of personal jurisdiction over SICI in North Carolina offends due process.

B.

The Due Process Clause of the Fourteenth Amendment limits the power of a state to assert *in personam* jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 109 S. Ct. 1868 (1984). There are two types of personal jurisdiction: specific and general. Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994); Regent Lighting Corp. v. American Lighting Concept, Inc., 25 F. Supp. 2d 705, 710 (M.D.N.C. 1997). Specific jurisdiction exists when the forum state asserts personal jurisdiction over the defendant in a suit "arising out of or related to" the defendant's purposeful contacts with the state. Helicopteros Nacionales, 466 U.S. at 414-16. For specific jurisdiction to be found, due process requires that the defendant "purposely direct its activities at the forum." Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989). If, on the other hand, the issues before the court did not arise in the forum state, then general jurisdiction exists only when the defendant had sufficient "continuous and systematic contacts" with the forum state. Helicopteros Nacionales, 466 U.S. at 414. Thus general jurisdiction requires "a more demanding standard than is necessary for

6

establishing specific jurisdiction." AIS Scan Inc. v. Digital Services Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

Because this action arises out of the License Agreement between SICI and Cortex the inquiry is one of specific jurisdiction. To determine the existence of minimum contacts, the court considers: (1) the extent that SICI "purposefully availed" itself of the privileges of conducting activities in North Carolina; (2) whether Cortex' cause of action arises from those activities which SICI purposely directed at North Carolina; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Id. Additionally, "a contract with a resident of a forum state does not automatically constitute sufficient contacts to support the exercise of specific jurisdiction, even when the dispute arises from the contract." Burlington Indus., Inc. v. Yanoor Corp., 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001). Rather, the contract must have a substantial connection with the state so that "the nature and quality of a defendant's relationship to the forum 'can in no sense be viewed as random, fortuitous, or attenuated.'" Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174 (1985)). Cortex contends that the negotiation, agreement, and subsequent sale of the License Technology to SICI provides the necessary "minimum contacts" with the state of North Carolina for specific jurisdiction to be exercised over SICI.

In determining whether the exercise of personal jurisdiction over a defendant offends due process, the Fourth Circuit has given great weight to the question of

7

who initiated the contact between the parties.  See, e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (finding no personal jurisdiction when the contractual relationship was initiated by the plaintiffs); Burlington Indus., 178 F. Supp. 2d at 562 (finding an adequate basis for personal jurisdiction over the defendant because defendant initiated the contact with plaintiff in North Carolina and portions of the contract were negotiated in North Carolina).  In this case, SICI initiated the contact with Cortex at its North Carolina location after being referred to Cortex by its previous provider.  The initiation of contact by SICI weighs in favor of a finding of personal jurisdiction in North Carolina.  See Cree, Inc. v. Exel North Am. Logistics, Inc., 2004 WL 241508, at *3 (M.D.N.C. Feb. 6, 2004) (upholding personal jurisdiction primarily because defendant initiated business in North Carolina with plaintiff and substantial performance under the contract was to occur in North Carolina).

Second, the nature of the License Agreement between SICI and Cortex supports a finding of personal jurisdiction over SICI.  See Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986) (drawing a distinction between a single transaction in the forum state and a "substantial and continuing relationship") (citing Burger King, 471 U.S. at 487).  Here, the terms of the License Agreement contemplate an ongoing relationship between SICI and Cortex lasting at least two years.  According to Mr. Thompson, from August 2002 through March 2005, numerous orders were placed by SICI with Cortex for the purchase of the

8

License Technology. These orders resulted in payments from SICI to Cortex totaling $117,300.00. (Thompson Aff. ¶ 9-10.) Additionally, "[t]hroughout this time period, Cortex provided SICI with hundreds of hours of technical support via electronic mail and by telephone." (Id. at 10.) In fact, the License Agreement itself contemplated at least "eighty (80) man-hours of technical support, training and assistance in the development and/or integration of the Licensed Technology with [SICI's] products." (Compl. Ex. A, 3.) This type of agreement, which forecasts an ongoing relationship between the parties comprised of numerous transactions, strongly suggests personal jurisdiction. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 221-23, 78 S. Ct 199, 200-01 (1957) (holding that where life insurance contract remained in force over a period of several years and payments were mailed to forum state, personal jurisdiction did not offend due process); CBP Res., Inc. v. Ingredient Res. Co., 954 F. Supp. 1106, 1109 (M.D.N.C. 1996) (finding sufficient contacts when defendant entered into a five year agreement with a North Carolina plaintiff).

Third, the agreement between the parties expressly states it is governed by the laws of the State of North Carolina. (Compl. Ex. A, 8.) Although a choice of law provision is not determinative of personal jurisdiction, it is another factor suggesting SICI "purposefully availed" itself of the laws of the state of North Carolina. See Burger King, 471 U.S. at 482 ("Although [the choice of law] provision standing along would be insufficient to confer jurisdiction, we believe

9

that . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."); Chung, 783 F.2d at 1128 ("[T]he franchise documents provided that all disputes would be governed by Florida law, giving the defendant fair notice that he might be subject to suit in Florida.").

Finally, the visits by SICI's President to the Cortex facility in North Carolina distinguishes this situation from those concerning a simple contract for goods. The Fourth Circuit has suggested that this additional contact between SICI and North Carolina supports a finding of personal jurisdiction. For example, in Chung v. NANA Development Corp., 783 F.2d 1124 (4th Cir. 1986), the court stated that "[t]he factors considered in determining whether the defendant purposefully established minimum contacts with the forum include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. at 1128 (citing Burger King, 474 U.S. at 478). The Chung court then found there was no constitutional basis for jurisdiction over an Alaskan seller of reindeer horns to a Virginia purchaser when the defendant did everything in its power to confine its activity to Alaska but was unexpectedly forced by the buyer's activity to ship the antlers to Virginia. Id. at 1128-29. The visits by SICI's president to Cortex' North Carolina offices distinguishes this case from those involving the mere sale of goods to a party in the forum state. Rather, SICI's president's travel to North Carolina on two

10

separate occasions to facilitate the agreement also suggests SICI purposefully directed is actions at North Carolina. See Burlington Indus., 178 F. Supp. 2d at 568 (finding personal jurisdiction when defendant's president visited North Carolina and engaged in meetings with led to the negotiation and subsequent execution of the agreement between the parties); Triad Motorsports, LLC v. Pharbco Mktg. Group, Inc., 104 F. Supp. 2d 590, 598 (M.D.N.C. 2000) (holding personal jurisdiction present where contract clearly indicated plaintiff was located in North Carolina and defendant's president traveled to North Carolina and visited plaintiff's headquarters to discuss the parties' obligations under the contract); Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc., 294 F. Supp. 2d 823, 829 (N.D. W. Va. 2003) (finding because the defendant specifically contracted to travel to West Virginia to install the product and train plaintiff's employees on its use and operation, sufficient minimum contacts existed).

In the aggregate SICI's initiation of the relationship with Cortex, the visits by SICI's president to North Carolina, the ongoing nature of the License Agreement, and the North Carolina choice of law provision support personal jurisdiction over SICI in North Carolina. Thus, SICI's Motion to Dismiss will be denied.

IV.

In the alternative, SICI requests this case be transferred to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404. Section 1404 provides: "For the convenience of the parties and witnesses, in the interest of

11

justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. A defendant's burden, however, to show that an action should be transferred from a district where venue is proper is "particularly heavy." Phillips v. S. Gumpert Co. Inc., 627 F. Supp. 725, 727-28 (W.D.N.C. 1986) ("The Defendant must make a clear showing that the balance of factors bearing on the convenience of witnesses, the convenience of parties, and the interests of justice weighs strongly in its favor); see also Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") SICI has not met this burden. Although many of SICI's witnesses may be located in Texas, Cortex and its witnesses are located either in North Carolina or outside of the state of Texas. Thus, while transfer of this case to Texas is more convenient *for the Defendant*, that does not justify the inconvenience transfer would place on Cortex and its witnesses. See Burlington Indus., 178 F. Supp. 2d at 571 (denying request under § 1404 when transferring the case would merely shift the expense of transporting documents and witnesses from one party to the other). Because SICI has offered no other reason in support of transfer, the motion for transfer will be denied.

V.

For the foregoing reasons, Plaintiff Cortex' Motion to Strike [Doc. #17] will

12

be GRANTED and SICI's Reply will be STRICKEN.

SICI's Motion to Dismiss for Improper Venue and Motion to Transfer Case [Doc. #5] will be DENIED.

This the day of April 12, 2006

                                                                           /s/ N. Carlton Tilley, Jr.
                                                                            United States District Judge